GABRIEL ROSADO, Plaintiff and Appellee, *v.* SMALLWOOD
BROS., INC., Defendant and Appellant.

No. 8704.   Argued June 16, 1943.—Decided November 30, 1943.

*Hugh R. Francis* for appellant.   *Edelmiro Huertas Zayas* and *R. Atiles Moréu* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

On December 5, 1940, Osvaldo Souffront Echevarría was working as a greaser in the workshop of the defendant-appellant at the city of Ponce.   On that day the foreman of the workshop ordered him to take to one Yumuri a certain new truck which the defendant had sold to the latter.   In compliance with said order, Souffront, who was also a chauffeur, drove the truck to Mayor-Cantera Street where he was to deliver it.   In said street, where the traffic was heavy, at the time there were several vehicles parked on either side of the street, and the plaintiff was approaching them on a bicycle and traveling in the same direction as Souffront. The latter, without taking into account the traffic on said street and that at the place along which the plaintiff was traveling the street was partially obstructed by said vehicles, attempted to pass between them at a speed of 25 miles per hour, thus causing the rear part of the truck to strike the plaintiff when attempting to avoid a collision with the vehi-

cles parked there. The plaintiff was thrown to the pavement, sustaining the injuries which have given rise to this action for damages. That the driver of the truck was an employee of the defendant acting within the scope of his employment and that the negligence of said driver was the proximate cause of the accident are facts beyond dispute which the defendant does not seriously question. Defendant's liability for the tortious act of its employee having been established, we will proceed to determine whether or not the court *a quo* was right in fixing the amount of the damages. The items awarded were as follows:

1. For the loss of fifteen days work at the Losey Field Air Base, at the rate of $2.80 per day _____ $42.00
2. Expenses for medical treatment, medicines, and special meals _____ 100.00
3. For the loss of work—actual and mental damages_____ 100.00
4. For physical and mental suffering in consequence of the bodily injuries received_____ 300.00

Total_____ $642.00

■ (1) The plaintiff satisfactorily proved that prior to the accident he had been working as a carpenter at the Losey Field Base and received wages at $2.80 per day. He attempted to prove that five days after the accident he received a notice from the W.P.A., advising him that he had ceased in his employment by reason of his absence from work for a period of fifteen days. To that end he offered in evidence the supposed written notice, but upon counsel for the defendant noting that the notice so offered was effective from January 26, 1941, and that it therefore must refer to another absence of fifteen days during the month on January 1941, his attorney withdrew the evidence offered, and the plaintiff, who at the moment was on the witness stand, testified that he had several similar notices; nevertheless he did not introduce in evidence the right one (Tr. of Ev., pp. 28–29). On the other hand, the witness Ramón Tristani

Martínez, chief timekeeper, who as a part of his work had to sign the pay rolls, with said pay rolls on hand, stated that they showed that the plaintiff had worked eight hours at the Base on November 19, 1940, and that from that date on he had not returned to work nor had he worked during the period from December 4 to 11, 1940. So that by the time defendant sustained the accident on December 5, 1940, assuming without deciding that he had worked on that very day, the fifteen days' absence which he claimed was the cause of his dismissal from work at Losey Field, had already expired since December 4, 1940. But the lower court granted no compensation to plaintiff for that item. It may be inferred from the opinion that the court granted compensation to plaintiff for these fifteen days as if plaintiff had been precluded from working during that time due to defendant's fault, which conclusion is manifestly erroneous, because the accident, as we have seen, occurred after the said fifteen days had elapsed. This item, in our judgment, should be eliminated.

■■ (2) The second item of $100 for expenses for medical treatment, medicines, and special meals, was not fully proved. The physician testified that he treated the plaintiff for a period of four to six weeks and that his fees amounted to $50. But the plaintiff failed to introduce any evidence regarding the medicines and special meals. On the contrary, his physician stated that he had only prescribed for him "hot packs, rest, and some sedatives." And the plaintiff only testified that at the time of the accident he had savings amounting to $75, which he spent. That evidence is clearly insufficient to prove the expenses for medicines and special meals. Therefore, the second item for damages must be reduced to $50, which represents the amount of the medical fees.

(3) By the third item, which refers to loss of work and actual and mental damages, the court granted $200. The

plaintiff testified that he was incapacitated for work during twenty-six days, that is, from the 5th to the 31st of December (Tr. of Ev. p. 26). Those twenty-six days during which he failed to work by reason of the accident, at the rate of $2.80 per day which he earned as wages, amounted to $72.80. But there can be no recovery for mental anguish · or suffering flowing from the inability or failure to work. Cf. *Díaz* v. *Cancel*, 61 P.R.R. 857. Consequently, said item, for which the lower court granted $200, must be reduced to $72.80.

(4) By the fourth item the court granted $300 for physical and mental suffering due to the injuries received. This item of $300 is amply supported by the evidence. Dr. Lanauze, testifying for plaintiff, stated that the latter exhibited several bruises on the chest and on his left-side ribs and on his legs extending from above the knee almost to the ankle, which were so serious that he feared that there might be a fracture of some rib or of the leg, and that the plaintiff was suffering for about four or five weeks.

We should not close this opinion without stating our disapproval for the unbecoming behavior of the appellee's attorneys, Messrs. R. Atiles Moréu and E. Huertas Zayas, towards their colleague, Attorney Edgar S. Belaval, who represented the defendant at the trial in the court *a quo*. Attorney Belaval, in a motion which he filed in this court on the 24th of last June, complains that said attorneys for the appellee, in the brief filed by them in this court, made the following charges against him which are insulting as well as unfair:

"The testimony of Ramón Tristani fixed November 19, 1940, as the date on which the plaintiff ceased working at the Losey Field Air Base, and this was done arbitrarily and in order to adjust it to the defendant's personal point of view that the cessation from work preceded the accident. Since they claim that November 19, 1940, was the last day plaintiff worked at the Base, the next 15 days being unaccounted for, the 15-day period ended on December 4, 1940, and

on the day preceding the accident, he was already responsible for his failure to work. The trick is obvious; the artifice can be easily detected. Counting 15 days retrospectively from December 5, 1940, the day of the accident, it turns out that November 19, 1940, a day cleverly fixed by the defendant, was the last day on which the plaintiff worked at the Base . . . And inasmuch as the defendant had a special interest in proving that plaintiff was absent from work, not 15 days after the accident, but during the 15 days preceding same, it arbitrarily, capriciously, and cunningly fixed the date of the cessation of plaintiff's work at the Base as of November 19, 1940. It appears at the outset that this is a testimony made to order, fabricated expressly to make a case . . . But it did not dare to introduce in evidence the pay rolls, because those pay rolls can not be altered at pleasure . . . It is most strange that the plaintiff should have been absent from work during the 15 days next preceding the accident . . . Or that he should have acted with such chronometric exactness. Not one day more nor less. As we have already stated, a testimony made to order . . . ''

The fact that the pay rolls pertaining to the work on the Losey Field Base, which were not under the control of the defendant nor of its counsel, but which were public documents in the custody of a government agency which had no connection with either the defendant or its attorney, should show beyond all doubt that the plaintiff had not worked during the fifteen days next preceding the day of the accident, does not tend to prove in any manner or form whatsoever that the attorney for the defendant had ''arbitrarily, capriciously, and cunningly'' fixed the date on which the plaintiff ceased working at the Base. That was a fact conclusively shown by the pay rolls and, if the latter were not introduced in evidence by counsel for the defendant, this was doubtless due to the fact that he did not deem it necessary, inasmuch as Mr. Tristani, the witness in whose custody said pay rolls were, testified regarding their contents after the same had been exhibited to him in the presence of the court. It must not be overlooked that nothing tends more to destroy the consideration and respect with which the public must regard a professional class than false charges of the sort that we

are now discussing. It seems advisable to call the attention of said attorneys to the provisions of Article 17 of the Canons of Professional Ethics which govern the conduct of attorneys in Puerto Rico.

For the foregoing reasons, the judgment must be modified by reducing the amount thereof to $422.80, with costs, and as thus modified, the judgment must be affirmed.